I'm Karen Stolzberg. I'm representing Julie Soler Amor. This is a social security case, as you know. I think what's important to understand about this case is who Julie is. Julie comes from an extremely deprived background. She was the victim of a great deal of abuse, sexual and emotional, as well as physical abuse as a child and as an adult. Julie became a meth user. In 2007, she got in trouble with the law. She was required to go through treatment in order to address her methamphetamine addiction. After that, Julie has been substantially clean for many, many years. She hasn't been absolutely clean. She has had relapses. I've known her for many years, and I would average once a year or so she has a relapse. But largely she's been sober. She has not been well. She's been extremely mentally ill, and she is really a highly dysfunctional individual. In 2014, when the Affordable Care Act was enacted, Julie became eligible for medical insurance under the Oregon Health Plan. After that point, she got some psychiatric evaluations done that really change or provide a basis, let's say, for the underlying conditions. Prior to that, during the time that the hearing went forward, she had very little access to treatment. She was seeking treatment at a free Catholic clinic. It was extremely difficult for me to get medical records from them at all. They are so overwhelmed and underpaid that it was pulling teeth to get through to them. The judge in this case found that Julie's criminal background and her addiction were the primary reasons for her disability. To me, that is an entirely misguided decision. Counsel, perhaps, I know you've been doing this for a lot of years. Social Security, not appellate argument. No, no, no. Well, you're doing fine on your appellate argument, but remind me, wasn't there a time when drug addiction, substance dependency was a disqualifying... There was a time when it was actually a disability. Back in the 90s, if I recall, Mr. Staples can correct me, and then the pendulum swung way, way over, and then the law became that even if you were disabled by your drug addiction or alcoholism, you're not eligible for benefits. Was that the ground on which the administrative law judge... No, it wasn't. He did not find that drug addiction was material to her disability. He used her background and her circumstances as a credibility issue. Then, based upon that, disregarded everybody's... Well, that raises a question for me. Let's assume that he or she, the ALJ, he discounted her credibility based upon drug-seeking behavior. Let's assume that was an error. Why is it not a harmless error? Because he stated lots of other reasons, as well, for discounting her credibility. The primary reasons that he used for undermining her credibility, if you want to talk about credibility, was her background, and then her, quote, unquote, activities of daily living, which is the go-to rationale. Julie lived in, for many years, in a clean and sober house. She's highly isolative, but she shops. She goes to a day treatment center for homeless women with addiction issues. She goes to treatment. She has a friend, and she'll watch movies with her friend. The ALJ said something about work and her lack of motivation to work. Is that something you're attributing to drug use or just to her lifestyle and those homeless shelters? Well, I think that's a big issue, the work issue. When Julie was arrested for possession of meth, and she had a parole or probation officer, and work was a requirement of her parole, and so she did try to work. First of all, let's focus it. This work activity that is relevant occurred in 2011, if I'm not mistaken. There's discussion in the file about her working for the Marriott. It says, as of 2007, according to my notes. Okay. 2007 is when she finished her drug treatment, and that would have been when the work requirement went into effect. She worked. She got a job for the Marriott. The work activity at the Marriott looks like it lasted for less than a month part-time. There's reference to it in, let me see if I can find the notes. I'm sorry. There's reference to it in some of the chart notes at the time. The ALJ concluded that she could work, but lacked motivation, and also references her activities of daily living, walking, yoga, knitting, beadwork, volunteering. She tried to volunteer. These were all conditions of her recovery, and they were done through the auspices of transition projects, which is a homeless agency, or parole and probation. You presented some new evidence to the Appeals Council. How important is the new evidence in your view in overturning the ALJ's opinion? Does it not matter, or is it very important? I would say very important. The reason is that prior to those two evaluations taking place in 2014, there was no objective evidence establishing Julie's extremely low borderline IQ. Counsel, could you explain in that regard why you did not ask for a sentence six remand? To me, that's total red herring. I don't get it. Sentence six exists so that if there's new evidence that's created after the administrative proceedings, we can come to the court and say, we have new evidence. Here it is. Let's remand this case. Isn't that what the 2014 evaluations is? No, that was submitted. Let me finish my question. I thought you opened your argument by pointing out that in 2014, when she became eligible under Obamacare for health benefits, that she was actually able to get the evaluations, which I thought were pretty strong evaluations. I guess what I don't understand is why wouldn't you want a sentence six remand to get that evidence back before the ALJ? It seems to me the good cause would be she couldn't afford to get those evaluations until she got medical insurance. That's true, Judge. Why don't you want a sentence six remand? Can you explain that? Because we submitted the evidence to the administration during the administrative proceedings. It was already submitted. Well, you submitted it after you had lost at the ALJ level, right? The appeals counsel. Then the appeals counsel says, we looked at it, which I guess is a term of art, but because it covers a later time period, it's not relevant. Therefore, we're not making it part of the record. Isn't the easiest solution to that problem to ask for a sentence six remand so that it goes back? To me, it didn't seem like the appropriate course, because we had already submitted it to the agency for review. Let's assume that you're wrong in that assumption. Why wouldn't you want a sentence six remand at this point? Because it seems to me that ultimately gets you where you want to be, which is the evidence is actually, the record is essentially reopened. Correct. Assuming that the fact that she didn't qualify until 2014 is good cause, and I don't know what the law is on that, but that sounds like a good argument to me. You're right. What we want is for this case to go back to an ALJ to be evaluated, including all the new evidence. I mean, if you think that I should have submitted it under sentence six, I guess that's a difference in judgment regarding procedure. But you didn't ask for that. No, I did not. I mean, I may think in hindsight that that's what should have happened, but I can't rewrite history here. Yeah, okay. You know, to me, I went through a great deal of effort to try to scramble and get evidence that would show that she had much more profound limitations than what we were able to do. She has a new claim pending, does she not? Correct. Okay. So the claim that brings us here, the claim that brings us here is that she filed her application in 2011. But I thought she was claiming disability back to 2003. That's an odd little fact that appears in this. Well, is it a true fact or an untrue fact? I think it's an unsubstantiated allegation. How would you define the period of disability on the claim that she filed? From date of application. SSI benefits are only payable as of the date of application, which was, I believe, October of 2011. In most SSI applications, there isn't a little sentence in there that says, I became disabled on, because it's irrelevant. I mean, they could say, I've been disabled since birth, but it's irrelevant. I thought I understood Social Security law. Maybe I don't. I thought that the ALJ looks to the date of onset of the disability. Are you saying that that's limited? It can't be any earlier than the date she filed? In SSI cases, they're different from SSD cases. And there are different underlying requirements of the programs. So in an SSI case, according to Social Security rule 8320, which was just rescinded in the last month or something, but at the time it was in effect, it says that SSI benefits are effective as of the date of application. And the only time that you look to some other date is if the, I can't recall exactly what the language is, and I have far too many notes here, so I'm a little bit lost on that. You're actually well over your time. We'll give you a minute for rebuttal. Oh, okay. Thank you. Good morning. May it please the Court. Jeff Staples here for the Commissioner, who asks that you affirm the District Court's judgment because the ALJ's decision is supported by substantial evidence. I'd like to turn first to the new evidence that we were talking about. First of all, Judge Tallman was exactly right. Sentence 6 is the mechanism for getting evidence that's not in the administrative record before a court. Okay, so when the Appeals Council declines to include that evidence in the record, the claimant is not simply out of luck. Sentence 6 provides a vehicle for bringing that evidence to the court and saying, hey, take a look at this. This provides some basis for undermining the ALJ's decision. You should send it back for the ALJ to look at it. In this case, however, the new evidence is not material. It covers the same ground as the old evidence. How would we know that because it's not actually included in the record? Because the Appeals Council said, nope, it's not there, so it's not even in the record. How are you able to say for us that it's not material? Because Solar and Morse submitted the evidence, attached it to a brief, and so we can take a look. And that's how a sentence 6, that's the mechanism for sentence 6, is the claimant brings it straight to the court. But we can't evaluate its materiality, right? I mean, we can look at whether the Appeals Council, I guess the question is, can we look at whether the Appeals Council was wrong in making the Appeals Council's statement that we looked at it and decided it shouldn't be part of the record. If that was improperly decided, doesn't Taylor tell us that we can consider whether the Appeals Council was improper in rejecting the new evidence? No, Your Honor. Taylor is very clear that the court does not review the Appeals Council's decision. Not the denial, but yet it says, but we may review this person's, this doctor's improperly rejected opinion in our overall review of the ALJ's final decision. So it does seem to say we can consider whether the Appeals Council was wrong in saying that, in rejecting this piece of evidence. So Taylor was, in my view, a fairly unique constellation of facts. The Appeals Council didn't comment on that report. Nevertheless, it was in the record, and so that's why the court could review it, along with all the other evidence, in kind of a Bruce-style analysis. And so Bruce says that when the evidence is in the administrative record, you review everything for substantial evidence. And that's what the court did in Taylor. And so just help me understand this. So Dr. Thompson's letter, in your view, in Taylor, Dr. Thompson's letter was in the record. And why was it in the record? Because the Appeals Council put it in the record, and then the Appeals Council's mistake was failing to comment on it. But the court did, was pretty specific about not exercising jurisdiction over the Appeals Council's reasoning or their discussion. The court expressly disclaimed any jurisdiction over that. Nevertheless, because the evidence was in the record, the court was able to review it, along with everything else. And the court's subsequent decision in Bruce explains why that is the case. This is factually distinct, because the evidence is not in the record. And under Taylor and several other cases, the court does not have to review whether the Appeals Council gave good reasons or was correct or whatever in deciding what to do with that evidence. Nevertheless, as I said, that doesn't leave the claimant completely out of luck on the subject of the new evidence. The mechanism for getting that evidence before the court is not judicial review of the Appeals Council's decision. It's sentence 6 of 405G. So that's that when when evidence is absent from the record, but attached to an appellant's brief, it comes in under sentence 6, and that carries with it the good cause and materiality requirements. Do we have the power to order sentence 6 remand? You do, Your Honor. But you shouldn't in this case, because the new evidence is not material. It concerns a period after the ALJ's decision. It all postdates, and no one looked back and said, what do I think about Solar Amores functioning during the period under the ALJ's consideration? To the extent there are some records about physical limitations, and it's possible that her physical limitations worsened after the ALJ's decision, because of the hearings she said her physical limitations weren't causing any significant problems. So to the extent that those new records are attempting to show a worsened condition, she can and has filed a new application. And this Court's Ostenbrock case says that's the appropriate remedy. On the mental limitations, they're not material and they don't show a worsening because they're really more of the same. There's more testing done that confirms what all of the doctors who reviewed the record at the time of the ALJ's decision already knew, which was that Solar Amore had very limited intellectual functioning. And Dr. Duvall said that after his evaluation, and both state agency doctors who reviewed the evidence also agreed that that was a problem for her and caused some limitations. However, they didn't cause so many limitations that Solar Amore was unable to work. She could continue to work in simple repetitive tasks with no more than occasional public contact. Solar Amore's work history also supports this conclusion. In her application, she alleged that she became disabled in 2003, but then she also admitted that she continued to work until 2010. And she, there's evidence that she was working for the Marriott in 2007 on a full-time basis. There's other evidence that she was declining to accept work because it was- Was it for more than a month? That was the first time I'd heard that from one counsel. The reference to the Marriott doesn't occur very often, and I don't, it's not clear to me when exactly she stopped working at the Marriott. I didn't see anything in the record that limited it to a month. I didn't either. She said she, there was one record that said she was starting work at the Marriott, another record that, and this is 516 and 518 to 19, so I didn't see a lot of references to it. But on the other hand, there's also her admission in the application that she didn't stop working until 2010, and the only reason that she stopped working was not because of her impairments, but because she was laid off. So this evidence allowed the ALJ to conclude that Solar Amore's statements about her limitations were not fully credible, and to the extent that any of the- Go ahead. Let me ask you a question about the credibility determination, because assume with me that the substance abuse and drug-seeking behavior were not correct ways to attack her credibility. Yes, Your Honor. That's still a harmless error, and why? It's absolutely a harmless error, because this, the working, the evidence that she was able to work at a time that she said she couldn't work, that's a very important factor for an ALJ to consider when the crux of the analysis is can you work? And here you're telling me that you can't work, and on the other hand, you're working. That's absolutely a proper credibility factor to consider. There's also the fact that she was choosing not to accept work, because it was unglamorous. This is a transcript 281. There's Dr. Duvall's opinion. You know, Solar Amore and a variety of lay witnesses said that she had extreme distractibility, couldn't follow a conversation, couldn't stay focused on any topic for more than a few minutes, but on the other hand, there was Dr. Duvall who conducted a thorough examination and clinical interview with Solar Amore, and although he didn't conduct all the tests that later doctors did, he still identified Solar Amore's limited intellectual functioning as a problem, but nevertheless found that she could follow the conversation. She had a somewhat limited fund of knowledge, but, you know, she didn't have these extreme distractibility problems that other people were describing. So the ALJ was permitted to rely on these factors, among others, in concluding that Solar Amore could perform simple repetitive work. And that being the case, any other errors related to Solar Amore's drug abuse were harmless. Does the record show, I realize she had some criminal history, although she tended to minimize her downplay. Is there anything in the record that shows during what periods of time she was incarcerated, which might explain why she wasn't working during this 2003 to 2014 time period? I can't say, I don't recall off the top of my head what those periods might have been, although I do recall that the ALJ pointed out that her criminal history might be more of a barrier to her employment than her actual functional limitations. And so, although I don't remember dates off the top of my head, it was something that the ALJ considered in saying, you know, you haven't worked much, why is that? Is it because of the impairments that you claim are disabling, or is it maybe because of these other factors? And given her at least occasional work during the period that she claimed to be disabled, that was another reasonable basis for the ALJ's decision. Thank you. Okay, we'll give you a minute for rebuttal. A couple things. With respect to the issue of whether or not the evidence that was submitted to the Appeals Council should have been made part of the record, this discussion goes back far earlier than Bruce. I would request that you look at Perez v. Chater, which is found at 77 F. 3rd, 41, from 1996, in which the court went through an exhaustive review of all the treatment of this issue by all the different circuits, and found that the regulations require that the Appeals Council evaluate the new evidence, and it should be made part of the record. But doesn't the Appeals Council have the same discretion that a district judge has in ruling on a motion in limine as to whether or not evidence is relevant to the issue that is before the court or the administrative agency? I'm trying to figure out why it's different at the Appeals Council level versus what it would be if we were talking about a district court ruling. Appeals Council has a duty to evaluate the case to determine whether the ALJ decision was relevant and correct based upon the evidence of record. But the relevancy I'm posing here is the relevancy of the proffered new evidence to the basis for the claim. The regulation, in effect, at the time says that the Appeals Council shall evaluate the entire record, including new and material evidence. Counselor, you're not answering my question. My question is a pretty simple one. Why doesn't the Appeals Council have the same discretion that a district judge has in deciding what's relevant and what's not when it comes to proffered evidence? Well, because the regulations don't give them that role. So you can submit anything under the sun, and the Appeals Council has to consider it and evaluate it? The old regulation, I'm sorry, I keep interrupting you. You do. I do. I'm less concerned about that than I am about the fact that you're not answering my question. The Appeals Council's obligation, duty, is governed by the regulations. The regulation says that they shall evaluate the entire record, including the new and material evidence. And material, that's what I'm asking you. What if the Appeals Council decides, as it did here, that the proffered evidence is not material because it's outside the time period covered by her period of disability claim? I think the time period, looking at the time period, is more limiting than it should be. What matters is whether the evidence is relevant to the inquiry. And you're saying that the Appeals Council has no discretion in ruling that proffered evidence is not relevant to deciding disability for that period? It appears as though the Appeals Council looks to the date and to whether or not the evidence was created, prior on or before the date of the unfavorable ALJ decision, rather than looking at the underlying substance to determine if it is, in fact, relevant to the decision. Well, there is a notion, even in our court, that we don't normally consider evidence that was obtained or proffered after the district court or the administrative agency ruled. And the problem you've got here is one of timing. This evidence didn't surface until after the ALJ had issued its written decision. Yes, that's true, it didn't. We didn't have the opportunity to get it. I just want to add a couple things. You're over your time. Thank you. But they're good. Thank you, Judges. Thank you. We appreciate each party's arguments, and the case of Julie Solaramore v. Barry Hill
judges: Tallman, Ikuta, Bough